#### IN THE UNITED STATES DISTRICT COURT
#### DISTRICT OF SOUTH CAROLINA
#### CHARLESTON DIVISION

| | | |
|---|---|---|
| Randy Levins Baker, | ) | Civil Action No. 2:20-CV-03278-RMG |
| | ) | |
| Plaintiff, | ) | **ORDER AND OPINION** |
| | ) | |
| v. | ) | |
| | ) | |
| Desmend Garner, in his individual capacity; A. Nichols, in his individual capacity; City of Summerville, SC; | ) ) ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is the Report and Recommendation ("R & R") of the Magistrate Judge (Dkt. No. 35) recommending the Court grant in part and deny in part Defendants' motion for summary judgment. (Dkt. No. 20). For the reasons set forth below, the Court adopts in part and declines to adopt in part, the R & R as the Order of the Court.

**I.    Background**

Randy Levins Baker ("Plaintiff") initiated the instant civil rights action against Defendants Desmend Garner, Brian Nichols, the City of Summerville, South Carolina, and the City of Summerville Police Department arising out of an incident where Garner and Nichols allegedly unlawfully entered Plaintiff's hotel room and utilized excessive force to arrest Plaintiff. Garner and Nichols are police officers employed by the City of Summerville Police Department. The incident was captured on the officers' body camera footage.

On May 3, 2019, at approximately 1:00 a.m. Garner and Nichols responded to a report of a disturbance between roommates at the Wyndham Gardens Hotel in Summerville, South Carolina, which resulted in their arrest of Plaintiff. (Dkt. No. 1 at ¶ 2) (Dkt. No. 20 at 2). Garner and Nichols

spoke with various individuals at the hotel who said Plaintiff, as the head foreman, told one of the workers to kick his roommate out of the hotel room. (Dkt. No. 30-4, Nichols BWC at: 0:00:1-30; 0:04:32-40). Garner and Nichols knocked on the door of Plaintiff's hotel room and Charlie Couch answered. Garner told Couch he wanted to speak to Plaintiff. Couch gestured to the officers and retreated into the room to awaken Plaintiff. (*Id.* at ¶¶ 3-5). The parties dispute Couch's gesture. Defendants represent that Couch waved Garner and Nichols into the hotel room and held the door open while he walked back into the room to get Plaintiff. (Dkt. No. 34-3, Nichols Depo. at 12:15-19); (Dkt. No. 34-2, Garner Depo. at 15:7-10); (Dkt. No. 30-4, Nichols BWC at 07:32); (Dkt. No. 30-5, Garner BWC at 06:37.). Plaintiff represents that Couch did not wave Garner and Nichols into the room, nor did he hold the door open for them. (Dkt. No. 34-1, Plaintiff Depo. at 54).

Less than one minute after Couch retreated into the room to get Plaintiff, Garner entered the room and called Plaintiff's name. (Dkt. No. 30-5, Garner BWC at 0:07:28-45). Plaintiff was in bed at the time and cursed at Garner and told him to leave the room. (*Id.* at 0:08:32). Garner did not leave and told Plaintiff he could not speak to him like that because he was investigating an incident involving Plaintiff's workers. (*Id.*). Plaintiff became heated, arose from his bed, and approached Garner. (*Id.* at 0:08:40). Plaintiff eventually made physical contact with Garner. (*Id.* at 0:08:41). The parties disagree about what happened next. Defendants represent that during the altercation, Plaintiff chest bumped Garner and then held Garner in a headlock. (Dkt. No. 20 at 2). Plaintiff represents that Garner and Nichols "wrestled Plaintiff to the ground and continued to assault Plaintiff by way of both physical violence and the administration of electric shocks" delivered by a taser. It is undisputed that Garner deployed his taser on Plaintiff. (Dkt. No. 34-3, Garner Depo. at 15, 18, 21). Plaintiff was arrested. (Dkt. No. 34-3, Nichols Depo. at 19:17-20); (Dkt. No. 30-3).

Plaintiff initiated the instant lawsuit on September 15, 2020, asserting both federal and state law claims against Defendants as follows: (1) unlawful entry pursuant to 42 U.S.C. § 1983 in violation of Plaintiff's Fourth Amendment rights against Defendants Garner and Nichols; (2) excessive force pursuant to 42 U.S.C. § 1983 in violation of Plaintiff's Fourth Amendment rights against Defendants Garner and Nichols; (3) state law claim for assault as to Defendants Garner and Nichols; (4) state law claim for battery against Defendants Garner and Nichols; (5) state law claim for negligent hiring, retention, and supervision against Defendants City of Summerville and City of Summerville Police Department; (6) state law claim for malicious prosecution against Defendants City of Summerville and City of Summerville Police Department.

The City of Summerville Police Department was dismissed from this action on October 2, 2020. (Dkt. No. 6). On February 14, 2022, the Magistrate Judge issued an R & R recommending the Court grant in part, deny in part Defendants' motion for summary judgment. (Dkt. No. 35). On March 31, 2022, Garner filed objections to the R & R. (Dkt. No. 42). On March 23, 2022, Plaintiff filed a response in opposition to Garner's objections to the R & R. (Dkt. No. 43). The matter is ripe for the Court's review.

**II.     Legal Standard**

    **A.     Summary Judgment**

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the

movant and in favor of the non-moving party. *US. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id. quoting First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### B.     Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270 – 71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(l). In the absence of any specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th

Cir. 2005) (internal quotation omitted). Defendant filed objections and therefore the R & R is reviewed *de novo*.

### III. Discussion

#### A. Plaintiff's Federal Claims

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 claims against Defendants Garner and Nichols for unlawful entry and excessive force. (Dkt. No. 1-1 at 5-7). Garner and Nichols assert that exceptions to the warrant requirement preclude a finding of unlawful entry and that the force used to arrest Plaintiff was reasonable. In addition, they argue they are entitled to qualified immunity as to each claim. The Court will consider the Magistrate Judge's findings as to each claim in turn.

##### 1. Unlawful Entry

Plaintiff alleges Garner and Nichols unlawfully entered his hotel room without a warrant in violation of his Fourth Amendment rights. Defendants argue the entry was proper under the consent and exigent circumstances exceptions to the warrant requirement. (Dkt. No. 20 at 6-7).

"Freedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment." *Payton v. New York*, 445 U.S. 573, 587 (1980). The Fourth Amendment ensures the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." U.S. Const. amend. 4. "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton*, 445 U.S. at 586. "This Fourth Amendment protection extends to guests staying in hotel rooms." *Workman v. Cooper*, No. 6:08-CV-3429-HFF-KFM, 2010 WL 3192911, at * 4 (D.S.C. July 16, 2010), *adopted by*, 2010 WL 3190869 (D.S.C. Aug. 6, 2010).

An exception to the warrant requirement is made when certain exigent circumstances exist. *United States v. Cephas*, 254 F.3d 488, 494 (4th Cir. 2001). "[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). Whether an officer's entry into a home is justified under this doctrine boils down to "whether under the circumstances known to [the officer] would create an 'objectively reasonable belief that an emergency existed that required immediate entry to render assistance or prevent harm to persons or property within.'" *Hunsberger v. Wood*, 570 F.3d 546, 555 (4th Cir. 2009).

In addition to the exigent circumstances exception, a warrantless entry is considered constitutional where the entry is "conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). "[T]he Fourth Circuit has made it clear that consent may be implied in appropriate circumstances." *United States v. Gwinn*, 46 F. Supp.2d 479, 484 (S.D. W. Va. 1999), *aff'd but criticized*, 219 F.3d 326 (4th Cir. 2000) (collecting cases). "Consent need not be expressed in a particular form, but 'may be inferred from actions as well as words.'" *United States v. Hylton*, 349 F.3d 781, 786 (4th Cir. 2003). Further, "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *United States v. Matlock*, 415 U.S. 164, 170 (1974).

   a. Consent

Defendants argue the consent exception to the warrant requirement precludes a finding that Garner and Nichols unlawfully entered Plaintiff's hotel room. The Magistrate Judge comprehensively analyzed the issue to determine there are questions of material fact as to whether Couch consented to Garner and Nichols' entry into the hotel room. (Dkt. No. 35 at 20). Garner objects to the finding of the Magistrate Judge and argues that Couch made responsive gestures of

invitation that a reasonable person would have understood as an invitation into the room. (Dkt. No. 42 at 7). Garner argues Couch had actual authority to consent to Garner and Nichols' entry and provided his consent at the door. (*Id.* at 6-9).

Garner's body camera footage captures him knocking on Plaintiff's hotel room and him asking for Plaintiff. (Dkt. No. 30-5, Garner BWC at 0:6:04). Plaintiff's roommate, Couch, cracks open the door and tells Garner Plaintiff is in the room. Couch makes a gesture toward the room. (*Id.* at 06:39-43). Garner tells Couch to wake Plaintiff up. (*Id.* at 06: 43). Couch turns around to retrieve Plaintiff and does not fully close the door. (*Id.*). Plaintiff admits that Couch was an occupant of the room and could grant permission for the officers to enter if he wanted to. (Dkt. No. 34-1, Plaintiff Depo. at 54: 1-5). The parties dispute the correct interpretation of Couch's gesture to Garner and Nichols. Defendants argue it was an invitation to enter Plaintiff's hotel room. (Dkt. No. 20 at 7). Plaintiff argues the gesture was not an invitation for Garner and Nichols to enter the hotel room. (Dkt. No. 43 at 4).

The Court overrules Garner's objection. Viewing the evidence in a light most favorable to Plaintiff, the Court finds there is a question of material fact as to whether a reasonable juror would believe Couch's hand gesture was an invitation to enter, or simply an indication Plaintiff was in the room. The Court agrees with the Magistrate Judge's recommendation and denies Defendants' motion for summary judgment as to the application of the consent exception to the warrant requirement to defeat Plaintiff's unlawful entry claim against Garner and Nichols.

b. Exigent Circumstances

Defendants argue the exigent circumstances exception to the warrant requirement applies to Garner and Nichols' entry into Plaintiff's hotel room. (Dkt. No. 20 at 7). The Magistrate Judge comprehensively analyzed this issue as to Garner and Nichols separately as they entered Plaintiff's

hotel room at different times. As to Garner, the Magistrate Judge determined it was objectively unreasonable for Garner to suspect Plaintiff was dead or otherwise in danger such that the exigent circumstances exception to the warrant requirement applied to Garner's entry into Plaintiff's hotel room. (Dkt. No. 40 at 22). Garner objects to the finding of the Magistrate Judge and argues there is a question of material fact as to whether the exigent circumstances exception applies. (Dkt. No. 42 at 10).

The record reflects that Garner and Nichols reported to the hotel to investigate a disturbance between roommates. Garner and Nichols spoke with two witnesses at the hotel regarding the indecent and neither witness indicated Plaintiff was in danger. Plaintiff had been drinking prior to the officers' arrival. (Dkt. No. 34-1, Plaintiff Depo. at 33). Garner and Nichols knocked on the door of Plaintiff's hotel room. When Couch answered the door, he did not indicate anything was wrong with Plaintiff. (Dkt. No. 30-5, Garner BWC 0:06:04). Couch retreated to the room to wake Plaintiff and did not sound alarmed or distressed. After approximately 45 seconds, Garner entered the room and asked if the Plaintiff was dead to which Couch responded "no, dead asleep." (*Id.* at 0:07:39-44). Seconds later, Garner proceeded to wake Plaintiff.

The Court overrules Garner's objections. Viewing the evidence in a light most favorable to Plaintiff, the Court finds there no issue of material fact as to the application of the exigent circumstances exception to Garner's entry. A reasonable juror could find it was not objectively reasonable for Garner to suspect Plaintiff was dead, or otherwise in danger under the circumstances. (Dkt. No. 35 at 22). The Court agrees with the Magistrate Judge and denies Defendants' motion for summary judgment as to the application of the exigent circumstances exception to the warrant requirement to Garner's entry into Plaintiff's hotel room.

As to Nichols, the Magistrate Judge correctly determined the exigent circumstances exception to the warrant requirement applies to Nichols' entry into Plaintiff's hotel room. (Dkt. No. 35 at 22-23). Nichols' body camera footage reflects that Garner first entered Plaintiff's hotel room and Nichols waited outside the room with the door open. (Dkt. No. 30-4, Nichols BWC at 0:08: 30). The room was dim. Nichols entered Plaintiff's hotel room once Plaintiff and Garner engaged in an unexpected physical altercation. (*Id.* at 0:09:39). Given the situation, it was objectively reasonable for Nichols to believe that Garner required assistance to get the situation under control. Thus, no constitutional violation can be found based on Nichols' entry into Plaintiff's hotel room under the exigent circumstances exception. There is no objection to the Magistrate Judge's finding. The Court agrees with the recommendation of the Magistrate Judge and Defendants' motion for summary judgment is granted as to Plaintiff's unlawful entry claim against Nichols.

### 2. Excessive Force

Plaintiff's excessive force claim alleges that Garner assaulted and tasered him, and that Nichols assaulted him in violation of Plaintiff's constitutional rights. Plaintiff argues he acted in defense of habitation and was entitled to use force against Garner and that he had the right to resist an unlawful arrest. (Dkt. No. 30-1 at 18, 22-23). The Magistrate Judge analyzed the excessive force claim as to Garner and Nichols separately.

As to Garner, The Magistrate Judge and found there were issues of material fact as to whether Plaintiff put Garner in a headlock. The Magistrate Judge determined that after Plaintiff moved to get out of the bed while cursing at Garner "Garner says 'let's go' while appearing to reach for his handcuffs." (Dkt. No. 35 at 25). The Magistrate Judge analyzed the claim under the factors set forth in *Graham v. Connor*, 490 U.S. 386, 394-95 (1989), to determine there were issues

of material fact as to whether Garner utilized excessive force to arrest Plaintiff and whether Plaintiff was entitled to resist Garner's arrest. Garner objects to the findings of the Magistrate Judge.

As to Nichols, the Magistrate Judge found there were no issues of material fact Nichols did not exercise excessive force to assist with Plaintiff's arrest.

A claim that law enforcement officials used excessive force while making an arrest, investigatory stop, or other 'seizure' of his person . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham*, 490 U.S. at 388. In applying the objective reasonableness standard, the question is "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) (citing *Graham*, 490 U.S. at 396-97)). When applying the objective reasonableness standard, the court should pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," and "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Ultimately, the question to be decided is 'whether the totality of the circumstances justifie[s] a particular sort of . . . seizure.'" *Id*.

"A person has a right to resist an unlawful arrest even to the extent of taking the life of the aggressor if it be necessary in order to regain his liberty." *State v. Poinsett*, 157 S.E.2d 570, 571 (S.C. 1967). Under the defense of habitation, "defending one's home or premises means ending an unwarranted intrusion through the use of reasonably necessary means of ejection." *State v. Rye*,

651 S.E.2d 321, 323 (S.C. 2007). "For the defense of habitation to apply, a defendant need only establish that a trespass has occurred and that his chosen means of ejectment were reasonable under the circumstances." *Id*

The record reflects that Garner entered the room and tried to wake Plaintiff from sleep. Plaintiff cursed at Garner and asked him to leave. (Dkt. No. 30-5 at 0:08:34). Garner told Plaintiff he could not speak to him that way as he was there to investigate an issue with Plaintiff's workers. (*Id.* at 0:08:34-37). Plaintiff became heated and rose from the bed. Garner stated, "let's go", touched his waistband, and appeared to be reaching for handcuffs. (Dkt. No. 30-4, Nichols BWC at 0:09:34). At this point, Plaintiff approached Garner and chest bumped him. (Dkt. No. 30-5, Garner BWC 0:08:39-41). The body camera footage turns dark. (*Id.*); (Dkt. No. 30-4, Nichols BWC at 09:38-45). Defendants argue that at this point, Plaintiff put Garner in a headlock. (Dkt. No. 20 at 9); (Nichols Depo. 14:6-12, 15:19-22, 26:11-15); (Garner Depo. 15:25, 21:16-17). Plaintiff denies placing Garner in a headlock during the altercation. (Dkt. No. 34-1, Plaintiff Depo. at 63:20-24). Defendants argue Garner deployed his taser because Plaintiff was actively assaulting Garner. Viewing the record in a light most favorable to Plaintiff, the Court agrees with the Magistrate Judge there is an issue of material fact as to whether Plaintiff put Garner in a headlock.

The Magistrate Judge analyzed the excessive force claim pursuant to the *Graham* factors and found the analysis did not weigh in Garner's favor. (Dkt. No. 35 at 27). Garner objects and argues the *Graham* factors weigh in his favor. Garner also objects to the Magistrate Judge's finding that Garner appeared to reach for his handcuffs. (Dkt. No. 42 at 4). Garner cites to Nichols' body camera footage to support his argument that Garner's handcuffs were not located in the area Garner reached for. (Dkt. No. 42 at 4) (citing Dkt. No. 30-4, Nichols BWC at 3:17, 8:28, and 9:35)).

Upon a review of the record and viewing the evidence in a light most favorable to the non-moving party, the Court overrules Garner's objections and agrees with the finding of the Magistrate Judge. Based on the totality of the circumstances, there are questions of material fact as to whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force; whether a jury could reasonably believe Garner's actions constituted the initiation of an arrest prior to the existence of any unlawful conduct; and whether Plaintiff's decision to chest bump Garner and escalate resistance to Garner's use of force was justified. Defendants' motion for summary judgment as to Plaintiff's excessive force claim asserted against Garner is denied.

As to Defendant Nichols, the Magistrate Judge comprehensively analyzed this issue to determine that Nichols reasonably exercised force to assist Garner in the arrest of Plaintiff. In the incident report, Nichols stated that prior to Garner deploying his taser, Nichols "ran to the bed and tried to secure [Plaintiff's] legs as he was flailing them." (Dkt. No. 30-3 at 7). Nichols stated that he secured Plaintiff's wrists in handcuffs after he was tasered by Garner. (*Id.*). Nichols' body camera footage indicates that he entered the hotel room only after Plaintiff and Garner were engaged in a physical altercation. (Dkt. No. 30-4, Nichols BWC at 0:09:36). After this point, the video is too dark to make out details until Garner tases Plaintiff. Neither party objects to the Magistrate Judge's finding as to Nichols. Viewing the evidence in a light most favorable to Plaintiff, there is no issue of material fact that Nichols did not use excessive force against Plaintiff.

The Court agrees with the recommendation of the Magistrate Judge that Nichols did not violate Plaintiff's constitutional rights when he physically intervened to assist the arrest of Plaintiff. Defendants' motion for summary judgment is granted as to Plaintiff's excessive force claim against Nichols.

### 3. Qualified Immunity

Garner and Nichols assert they are entitled to qualified immunity with regard to Plaintiff's Section 1983 unlawful entry and excessive force claims because neither officer could have understood his conduct was violating Plaintiff's constitutional rights. With respect to Nichols, the Magistrate Judge found he is entitled to qualified immunity because the exigent circumstances exception to the warrant requirement applied to his entry into Plaintiff's hotel room and therefore, did not amount to a constitutional violation of Plaintiff's rights. (Dkt. No. 35 at 22). The Magistrate Judge found that Nichols' conduct to assist the arrest of Plaintiff did not amount to excessive force and did not violate Plaintiff's constitutional rights. (*Id.* at 31). The Magistrate Judge determined that Nichols is entitled to qualified immunity. (*Id.*). There is no objection to this finding. The Court agrees with the finding of the Magistrate Judge that Nichols is entitled to qualified immunity.

With respect to Garner, the Magistrate Judge found Garner is not entitled to qualified immunity because there are issues of material fact as to whether Garner was presented with exigent circumstances to justify his warrantless entry into Plaintiff's hotel room and whether Garner's conduct deploying his taser constituted excessive force. (Dkt. No. 35 at 23, 29). Garner objects to this finding.

Qualified immunity shields police officers who commit constitutional violations from liability when, based on "clearly established law" they "could reasonably believe that their actions were lawful." *Est. of Jones by Jones v. City of Martinsburg, W. Virginia*, 961 F.3d 661, 667 (4th Cir. 2020), *as amended*, (June 10, 2020) (citing *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 537 (4th Cir. 2017). When determining whether an officer is entitled to summary judgment based on qualified immunity, courts engage in a two-pronged inquiry. *Smith v. Ray*, 781 F.3d 95, 100 (4th

Cir. 2015). The first prong concerns whether the facts, viewed in a light most favorable to the non-moving party, demonstrate that the officer's conduct violated a federal right. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The second prong concerns whether the "right was clearly established at the time the violation occurred such that a reasonable person would have known that his conduct was unconstitutional." *Smith*, 781 F.3d at 100. A right is "clearly established" if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Garner argues the Fourth Circuit has held "if there is a 'legitimate question' as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity." *Wiley v. Doory*, 14 F.3d 993 (4th Cir. 1994). Garner argues that given the Magistrate Judge's finding that a legitimate question exists as to whether Garner's conduct constituted unlawful entry and excessive force, Garner is also entitled to qualified immunity. (Dkt. No. 42 at 18). However, the Fourth Circuit has also explained that "[t]o the extent that a dispute of material fact precludes a conclusive ruling on qualified immunity at the summary judgment stage, the district court should submit the factual questions to the jury and reserve for itself the legal question of whether the defendant is entitled to qualified immunity on the facts found by the jury." *Willingham v. Crooke*, 412 F.3d 553, 560 (4th Cir. 2005); *see also Buonocore v. Harris*, 65 F.3d 347, 359 (4th Cir. 1995) ("Summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendant."). The Court overrules Garner's objection and agrees with the Magistrate Judge that due to genuine issues of material fact as to whether Garner violated Plaintiff's constitutional rights, summary judgment is denied as to Garner's claim for qualified immunity.

### B. Plaintiff's State Law Claims

#### 1. Assault and Battery

Plaintiff brings state law claims against Defendants Garner and Nichols for assault and battery. On summary judgment, Garner and Nichols assert they are entitled to immunity pursuant to the South Carolina Tort Claims Act ("SCTCA"), S.C. Code Ann. § 15-78-70 because they acted within the scope of their official duties during the events alleged. (Dkt. No. 20 at 3). Section 15-78-70 provides that an employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable except "if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15-78-70(b).

The Magistrate Judge determined that for the reasons previously discussed as to Plaintiff's excessive force claim, a jury could find Garner acted with malice in his conduct and therefore, he is not immune from liability under the SCTCA for assault and battery. *Morning v. Dillon County*, No.: 4:15-cv-03349-RBH, 2017 WL 4276906, at * 6 (D.S.C. Sept. 27, 2017) ("Because Plaintiff has a viable § 1983 excessive force claim against Rogers, there is a genuine issue of material fact as to whether the DSCO is liable under the SCTCA for the alleged assault and battery committed by Rogers) (citing *Barfield v. Kershaw Cty. Sheriff's Office*, 638 Fed. App'x 196, 201-03 (4th Cir. 2016) ("[I]n the case of a viable excessive force claim under § 1983, Barfield's SCTCA battery claim against the KCSO also survives [summary judgment]."). Garner objects to the finding of the Magistrate Judge and restates his prior arguments with regard to Plaintiff's excessive force claim. (Dkt. No. 42 at 17). Garner's objection is overruled as the Court previously determined there are issues of material fact with regard to Plaintiff's excessive force claim asserted against Garner. The Court agrees with the finding of the Magistrate Judge those issues of material fact

preclude a finding on summary judgment that Garner is entitled to immunity under the SCTCA for assault and battery. Defendants' motion for summary judgment is denied as to Plaintiff's claims for assault and battery against Garner.

The Magistrate Judge correctly determined that because Nichols' use of force was reasonable, there is no basis to find that Nichols' conduct amounts to assault and battery under South Carolina law. *Johnson v. City of Aiken*, 217 F.3d 839, 2020 WL 263823, at * 12 (4th Cir. 2000) (Under South Carolina law, "[a] police officer who uses reasonable force . . . is not liable for assault.") (quoting *Roberts v. City of Forest Acres*, 902 F. Supp. 662, 671-72 (D.S.C. 1995)). Defendants' motion for summary judgment as to Nichols' immunity from Plaintiff's assault and battery claims pursuant to the SCTCA is granted.

### 2. Malicious Prosecution

Plaintiff brings a claim for malicious prosecution against Defendant the City of Summerville. (Dkt. No. 1-1 at 9). Plaintiff's response in opposition to Defendants' motion for summary judgment states, "Garner and Nichols, as a matter of law, should remain on the hook for assault, battery, and malicious prosecution and the City of Summerville is immune from those claims under the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-70." (Dkt. No. 30-1 at 16). The Magistrate Judge considered Plaintiff's clarification and only construed the malicious prosecution claim as to Garner and Nichols. The Magistrate Judge concluded that Plaintiff's malicious prosecution claim should survive summary judgment as to Defendant Garner for the same reasons articulated as to Plaintiff's excessive force claim against Garner. The Magistrate Judge also found there were issues of material fact as to whether there was probable cause to arrest Plaintiff. (Dkt. No.35 at 36-39). The Magistrate Judge determined that Nichols is entitled to

summary judgment as to this claim for the same reasons articulated as to Plaintiff's excessive force claim against Nichols. (*Id.* at 39).

The elements of a malicious prosecution claim are: (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage. *Law v. S.C. Dept. of Corr.*, 629 S.E.2d 642, 648 (S.C. 2006).

Garner objects to the finding of the Magistrate Judge on the ground Plaintiff's amended complaint does not assert a claim for malicious prosecution against Garner and Nichols. The first amended complaint contains a sixth cause of action titled: "South Carolina Law-Malicious Prosecution Defendants City of Summerville and City of Summerville Police Department." (Dkt. No. 1-1 at ¶¶ 60-62). Plaintiff alleges "[t]hat after said unlawful acts as described above the City of Summerville has caused the Plaintiff to be charged with a crime and facing protracted ongoing criminal charges." (*Id.* at ¶ 60). Plaintiff alleges, "Defendants are aware that the criminal charges against the Plaintiff are without just cause or legal basis and the same were brought for the purpose of obscuring the Defendants' wrongful conduct." (*Id.* at ¶ 61). Plaintiff further alleges that "as a direct and proximate result of the Defendants' malicious prosecution, the Plaintiff has suffered significant distress, anxiety, suffering, and economic loss. (*Id.* at ¶ 62). Garner argues that Plaintiff has not moved to amend the complaint pursuant to Rule 15 to alter the title of his cause of action or the allegations thereunder and as such, the malicious prosecution claim asserted against him fails to state a claim. (Dkt. No. 42 at 17).

Upon a careful consideration of this issue, the Court finds that Plaintiff failed to move to amend the complaint pursuant to Rule 15 to assert a claim for malicious prosecution against Garner

and Nichols and it fails to state a claim as to these Defendants. The Court grants Defendants' motion for summary judgment as to Plaintiff's malicious prosecution claim as to Garner and Nichols. Plaintiff admits the City of Summerville is immune from a claim of malicious prosecution pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-70. (Dkt. No. 30-1 at 16). Therefore, the Court also dismisses Plaintiff's malicious prosecution claim asserted against the City of Summerville on summary judgment.

### 3. Negligent Hiring, Retention, Supervision

Plaintiff alleges that Defendant City "failed to adequately train and supervise the Defendants Garner and Nichols" and that "the behavior and actions of the Defendants Garner and Nichols'" put the City "on notice of the danger of wrongful conduct such as complained of herein." (Dkt. No. 1-1 at 8-9).

"Where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself negligent in hiring, supervising, or training . . . the employee." *James v. Kelly Trucking Co.*, 661 S.E.2d 329, 330 (S.C. 2008). "Negligent hiring cases 'generally turn on two fundamental elements-knowledge of the employer and foreseeability of harm to third parties.'" *Kase v. Ebert*, 707 S.E.2d 456, 459 (S.C. 2011) (*Doe v. ATC, Inc.*, 624 S.E.2d 447, 450 (S.C. 2005)). "The issue of an employer's knowledge concerns the employer's awareness that the employment of a specific individual created a risk of harm to the public." *Holcombe v. Helena Chemical Co.*, 238 F. Supp.3d 767, 770 (D.S.C. Feb. 23, 2017) (quoting *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp.3d 528, 538 (D.S.C. 2014)). As for foreseeability, while it "is usually an issue of fact, 'the court should dispose of the matter on a dispositive motion when no reasonable factfinder could find the risk foreseeable or the employer's conduct to have fallen below the acceptable standard.'" *Kase*, 707

S.E.2d at 459. The claim of negligent supervision also hinges on foreseeability. "An employer owes a duty of care to a third party when the possible harm resulting to the third party by the employee could have been reasonably anticipated by the employer." *Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292, 299 (S.C. 1996).

The Magistrate Judge comprehensively analyzed this issue and correctly concluded that Plaintiff fails to offer any evidence that supports a finding it was foreseeable to the City that any of its employees would violate Plaintiff's constitutional rights. There is no objection to this finding. The Court agrees with the recommendation of the Magistrate Judge to grant Defendants' motion for summary judgment as to Plaintiff's negligent hiring, retention, and supervision claim asserted against Defendant the City of Summerville.

### IV.    Conclusion

For the reasons set forth above, the Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the R & R as the Order of the Court. (Dkt. No. 35). The Court **DECLINES TO ADOPT** the determination of the Magistrate Judge that Plaintiff alleges a claim for malicious prosecution against Defendants Garner and Nichols and determination that Plaintiff's claim on summary judgment should be denied as to Defendant Garner and granted as to Defendant Nichols beginning on Page 36, line 8 and ending on Page 39, line 5. The R & R is otherwise **ADOPTED**.

Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED** in **PART**. (Dkt. No. 20). The motion is **GRANTED** as to:

- Plaintiff's 42 U.S.C. § 1983 claim for unlawful entry against Nichols;
- Plaintiff's 42 U.S.C. § 1983 claim for excessive force against Nichols;
- Defendant Nichols' affirmative defense of qualified immunity;

- Defendant Nichols' defense of immunity pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. Section 15-78-70 as to Plaintiff's claims for assault and battery;

- Plaintiff's claim for malicious prosecution;

- Plaintiff's claim for negligent hiring, retention, and supervision.

The motion is otherwise **DENIED**.

     **AND IT IS SO ORDERED.**

                                                              s/ Richard M. Gergel
                                                              Richard M. Gergel
                                                              United States District Judge

August 30, 2022
Charleston, South Carolina